James A. Vagnini
*Admitted pro hac vice*
jvagnini@vkvlawyers.com
Alexander M. White
*Admitted pro hac vice*
awhite@vkvlawyers.com
**VALLI KANE & VAGNINI LLP**
600 Old Country Road, Suite 519
Garden City, NY 11530
Telephone: (516) 203-7180

Merle Joy Turchik, SBA #011130
**TURCHIK LAW FIRM, P.C.**
2205 E. Speedway Blvd.
Tucson, AZ 85719
Telephone: (520) 882-7070
merle@turchiklawfirm.com

*Attorneys for **Plaintiffs***

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ELIZABETH LONGORIA and MELISSA GOMEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AAA ARIZONA, INC., a domestic corporation,<br><br>Defendant. | CASE NO.: 4:20-CV-00406 (BGM)<br><br>**FIRST AMENDED COMPLAINT**<br>**Statutory Violations**<br>**Failure to Pay Wages**<br><br>Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*<br><br>Ariz. Wage Act, ARIZ. REV. STAT. ANN. §§ 23-350, *et seq.*<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiff ELIZABETH LONGORIA ("Longoria") and Plaintiff MELISSA GOMEZ ("Gomez") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, bring this action for damages and other legal and equitable relief from Defendant AAA ARIZONA, INC. ("Defendant"), for violations of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §§ 201 *et seq.*, Arizona Revised Statutes §§ 23-350 *et seq.*,

("Arizona wage laws"), and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1.      This is a collective action brought by Plaintiffs challenging acts committed by Defendant against Plaintiffs and those similarly situated, which amount to violations of federal and state wage and hour laws.

2.      Defendant employed Plaintiffs and all those similarly situated as Customer Service Representatives (collectively with Plaintiffs, the "CSRs") in Tucson, Arizona. Defendant, however, required the CSRs to work "off-the clock" whereby they performed integral work prior to the start of their scheduled shift and while "clocked out" without any compensation, including overtime pay, in violation of the FLSA and Arizona wage laws.

3.      Accordingly, Plaintiffs bring this action, pursuant to 29 U.S.C. § 216(b), on behalf of a collective group of persons employed by Defendant as Customer Services Representatives within Tucson, Arizona during the past three (3) years through the final date of the disposition of this action who were subject to Defendant's unlawful "off-the-clock" policies whereby they were required to work prior to the start of their scheduled shift and/or were required to make-up "out of conformance time" in addition to their regular forty (40) hour workweek without overtime pay at one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek in violation of the FLSA and are entitled to recover: (i) unpaid overtime wages; (ii) liquidated damages; (iii) interest; (iv) attorney fees and costs; and (v) such other and further relief as this Court finds necessary and proper.

4.      Plaintiffs also bring this action pursuant to Fed. R. Civ. P. 23, on behalf of a class of persons employed by Defendant as Customer Services Representatives within Tucson, Arizona during the past one (1) year through the final date of the disposition of this action who were subject

to Defendant's unlawful "off-the-clock" policies whereby they were required to work prior to the start of their scheduled shift and/or were required to make-up "out of conformance time" without pay at their straight-time rate and unpaid overtime pay in violation of Arizona wage laws and are entitled to recover: (i) unpaid, deducted, and incorrectly paid straight-time wages; (ii) unpaid overtime (iii) treble damages; (iii) interest; (iv) attorneys' fees and costs; and (v) such other and further relief as this Court finds necessary and proper.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief under the Declaratory Judgment Statute, 28 U.S.C. § 2201, and under 29 U.S.C. §§ 201 *et seq.*

6.      Venue is proper in this Court pursuant to 29 U.S.C. §§ 201-219, in as much as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendant maintains offices, conducts business and resides in this district.

7.      The Court's supplemental jurisdiction is invoked to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

## THE PARTIES

8.      Plaintiff Longoria is a citizen of Arizona and resides in Tucson, Arizona.

9.      At all relevant times, Plaintiff Longoria was an "employee" of Defendant within the meaning of within the meaning of 29 U.S.C. § 203(e)(1) and A.R.S. § 23-350(2).

3

10. Plaintiff Gomez is a citizen of Arizona and resides in Tucson, Arizona.

11. At all relevant times, Plaintiff Gomez was an "employee" of Defendant within the meaning of the 29 U.S.C. § 203(e)(1) and A.R.S. § 23-350(2).

12. Defendant is a corporation, which is incorporated in Arizona.

13. Defendant transacted and continues to transact business within Arizona and this judicial district by formerly and currently employing the CSRs within Tucson, Arizona, operating facilities within Tucson, Arizona, and by providing automobile-related services to the citizens of Arizona.

14. Defendant has at all relevant times been an "employer" within the meaning of 29 U.S.C. § 203(d) and A.R.S. § 23-350(3).

15. Upon information and belief, the amount of qualifying annual volume of business for Defendant exceeds $500,000.00 and thus subjects Defendant to the FLSA's overtime requirements.

16. Upon information and belief, Defendant is engaged in interstate commerce. This independently subjects Defendant to the overtime requirements of the FLSA.

STATEMENT OF FACTS

**I.    General Facts**

17. Throughout the relevant time period, the CSRs were employed by Defendant at its Tucson, Arizona customer service facility (the "Facility").

18. The CSRs' job duties included, among other things, taking telephone calls from Defendant's customers and assisting them with their automobiles or travel.

19. The CSRs were normally scheduled to work forty (40) hours per workweek.

4

20.     The CSRs were normally scheduled to work five (5) days per workweek.

21.     The CSRs used Defendant's telephones and computers to perform their job duties.

22.     The CSRs were required to "clock in" and "clock out" via Defendant's computerized time recording system.

23.     The CSRs "clocked in" and "clocked out" of Defendant's time recording system whenever they took their allotted breaks.

24.     The CSRs' breaks were unpaid and were not counted as hours worked towards their regularly scheduled forty (40) hour work week.

25.     Throughout the relevant time period, The CSRs were also required to sign into Defendant's telephone system when they were ready and able to take telephone calls from its customers. They were also required to sign out of Defendant's telephone system whenever they were on break or after their shift concluded.

26.     The time spent between a CSR signing into Defendant's telephone system and signing out was known as "conformance time."

27.     Throughout the relevant time period, the CSRs were not permitted to "clock in" until five (5) minutes prior to the start of their scheduled shift.

28.     Throughout the relevant period, Defendant required the CSRs to be ready and able to perform their primary job duties (*e.g.*, receiving customer service calls) immediately upon the commencement of their scheduled shift.

29.  The CSRs were paid on an hourly basis.

30.  The CSRs were not paid on a salary or fee basis.

31.  The CSRs were promised and paid approximately $15.00 per hour.

32.  The CSRs' hourly wages were earned after working any period of time for Defendant.

33.  The CSR's earned hourly wages were due on each payday.

34.   The CSRs' hourly wages were non-discretionary.

35.   The CSRs were compensated bi-weekly via check or direct deposit.

36.   Defendant did not permit the CSRs to use their independent judgment on matters of significance.

37.   Throughout the relevant time period, the CSRs were not exempt from the statutory provisions of the FLSA.

**II.     Facts Pertaining to Defendant's FLSA Violations**

38.   Defendant's violations of the FLSA alleged below were willful as, upon information and belief, it had knowledge of the FLSA's statutory provisions.

39.   Defendant's unlawful "off-the-clock" policies described below (*i.e.*, Pre-Shift Work/Conformance Time) were maintained and implemented throughout the relevant time period.

**a.     Pre-Shift Work**

40.   In order to comply with Defendant's policy of being ready and able to receive customer calls upon the commencement of their scheduled shift, each and every workday, the CSRs had to prepare their computers and phones by clearing their computer's cookies, activating the Pinpoint Mapping System, activating the D3 Member Information System, and activating Defendant's landing page (collectively, the "Pre-Shift Work").

41.   Due to Defendant's underperforming computers, the CSRs often had to restart their computers several times before being prepared to receive customer calls at the start their scheduled shift.

42.   The Pre-Shift Work took approximately thirty (30) minutes to complete each workday, which equates to approximately two and a half (2½) hours per workweek.

43.   Thus, the CSRs arrived at the Facility approximately thirty (30) minutes before the start of their scheduled shift to perform the Pre-Shift Work.

44.    The CSRs were unable to perform their primary job duties (*e.g.*, receiving customer service calls) at the start their scheduled shift if they did not perform the Pre-Shift Work before "clocking in" as they could not assist Defendant's customers without Defendant's computer and its programs properly running.

45.    Accordingly, the Pre-Shift Work was integral to the CSRs' job.

46.    Defendant had actual and/or constructive knowledge that the CSRs were performing the Pre-Shift Work prior to the start of their scheduled shift as they required them to do so.

47.    The time spent performing the Pre-Shift Work was in addition to the CSRs' regular forty (40) hour workweek schedule. By consequence, the CSRs routinely worked a total of approximately forty-two and a half (42½) hours per workweek.

48.    The time spent performing Pre-Shift Work was compensable at the overtime rate as it brought their weekly time worked above or further above forty (40) hours.

49.    Defendant, however, did not compensate the CSRs anything, including overtime pay, for their time spent performing Pre-Shift Work. For example, if a CSR worked forty-two and a half (42½) hours in a workweek of which forty (40) hours were "on the clock" pursuant to their forty (40) hour workweek schedule and two and a half (2½) hours were "off-the-clock" performing Pre-Shift Work, that CSR was only paid for forty (40) hours of work at their straight-time rate.

50.    Defendant did not consider the Pre-Shift Work as time worked as it was performed prior to the CSRs "clocking in."

51.    The CSRs' paystubs did not reflect their time spent performing Pre-Shift Work.

52.    Defendant unlawfully required the CSRs to work "off-the-clock" by requiring them to perform the Pre-Shift Work in addition to their regular forty (40) hour per workweek schedule without pay at the overtime premium of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) hours per workweek in violation of the FLSA.

### b.    Conformance Time

53.    Throughout the relevant time period, in addition to being required to work prior to the start of their scheduled shift, the CSRs were required to make-up any "out of conformance time" by the end of the month that it was accrued.

54.    For example, if a CSR forgot to sign out of Defendant's telephone system during their break and/or forgot to sign out at the end of their shift they were considered "out of conformance."

55.    The amount of time considered "out of conformance" was the difference between the time the CSRs "clocked out" of Defendant's time recording system and the time they signed out of Defendant's telephone system after "clocking out."

56.    For example, if a CSR worked forty (40) hours "on the clock" during a workweek but had forty-one (41) hours of conformance time, that CSR had one (1) hour "out of conformance."

57.    Defendant required the CSRs to make-up the "out of conformance time" by working the time in addition to their regular forty (40) hour workweek before the end of the month in which it accrued.

58.    For example, if a CSR was one (1) hour "out of conformance" then, by the end of the month, that CSR was required to perform (1) hour of work in addition to their normal schedule.

59.    The CSRs made up on the "out of conformance time" by answering and responding to Defendant's customers calls during their allotted breaks and/or by working before or after the start of their scheduled shift.

60.    The time spent by CSRs making up "out of conformance time" was compensable at the overtime rate as it was time worked in addition to their regular forty (40) hour per workweek schedule and in addition to their Pre-Shift Work.

61.    Defendant, however, did not compensate the CSRs anything, including overtime,

for their time spent making up "out of conformance time."

62.     Thus, Defendant required the CSRs to work "off-the-clock" by requiring them to make-up "out of conformance time."

### III.     Facts Pertaining to Defendant's Arizona Wage Violations

63.     Defendant promised the CSRs a specific hourly rate of pay for all hours worked at or under forty (40) per workweek.

64.     As a result of this promise, the CSRs had a reasonable expectation to be paid their hourly rate for each hour worked per workweek.

65.     The CSRs specific hourly rate pay were wages as defined by Arizona Revised Statutes § 23-350(7).

66.     The CSRs hourly wages became earned immediately after any work was performed as their wages were determined by time worked.

67.     As a result of Defendant's "off-the-clock" policies alleged above (*i.e.*, Pre-Shift/Conformance Time), the CSRs were not paid all earned and due wages for their hours worked at or under forty (40) per workweek as they were deprived of their hourly pay for their time spent working "off-the-clock" in violation of Arizona's wage laws.

68.     Defendant's violations of Arizona's wage laws were willful and occurred throughout the relevant time period.

### IV.     Specific Facts Pertaining to Plaintiffs

69.     In or around April 2017, Plaintiff Longoria began her employment with Defendant as a CSR.

70.     In or around March 2017, Plaintiff Gomez began her employment with Defendant as a CSR.

71.     Plaintiffs were employed at the Facility.

72.     Plaintiffs was paid on an hourly basis.

73.     Plaintiffs were not paid on a salary or fee basis.

74.     Plaintiffs were paid approximately $16.00 per hour.

75.     Throughout the first year of her employment with Defendant, Plaintiff Longoria's regular schedule was forty (40) "on the clock" hours per workweek. Throughout the relevant time period, Plaintiff Gomez's regular schedule was forty (40) "on the clock" hours per workweek.

76.     When including the Pre-Shift Work and the time spent making up "out of conformance time," however, Plaintiffs routinely worked in excess of forty (40) hours per workweek.

77.     Throughout the relevant time period, Plaintiffs were required to perform, and did perform, Pre-Shift Work each and every workday so that they could perform their primary job duty of taking calls from Defendant's customers at the commencement of their scheduled shift.

78.     Plaintiffs performed approximately thirty (30) minutes per day or approximately two and a half (2½) hours per workweek of Pre-Shift Work.

79.     There were in fact weeks throughout their employment with Defendant, including during Plaintiff Longoria's first year of employment, where Plaintiffs were "out of conformance."

80.     Throughout the relevant time period, Plaintiffs were required to make-up "out of conformance time" by the end of the month in which it accrued as alleged above.

81.     Throughout the first year of her employment with Defendant, Plaintiff Longoria's time spent performing Pre-Shift Work and making up "out of conformance time" was in addition to her regular forty (40) hour workweek schedule. Throughout the relevant time period, Plaintiff Gomez's time spent performing Pre-Shift Work and making up "out of conformance time" was in addition to her regular forty (40) hour workweek schedule.

82.     Throughout the relevant time period, Plaintiffs were not paid anything, including

straight-time pay or overtime pay, for their time spent performing the Pre-Shift Work and making up "out of conformance time."

83.     Accordingly, as a result of Defendant's "off-the-clock policies," throughout the first year of her employment with Defendant, Plaintiff Longoria routinely worked in excess of forty (40) hours per workweek and was not compensated with an overtime premium of one and half (1½) times her hourly rate for all hours worked in excess of forty (40) hours per workweek in violation of the FLSA.  As a further result of Defendant's "off-the-clock policies," throughout the relevant time period, Plaintiff Gomez routinely worked in excess of forty (40) hours per workweek and was not compensated with an overtime premium of one and half (1½) times her hourly rate for all hours worked in excess of forty (40) hours per workweek in violation of the FLSA.

84.     As an additional result of Defendant's unlawful "off the clock" policies, throughout the relevant time period, Defendant failed to pay Plaintiffs all their earned and due straight-time and overtime wages in violation of A.R.S. § 23-355.

85.     In or around December 2019, Plaintiff Longoria was terminated.

86.     In or around February 2020, Plaintiff Gomez resigned.

87.     Throughout the relevant time period, Plaintiffs were not exempt from the FLSA.

88.     Throughout the relevant time period, Plaintiffs were subjected to Defendant's unlawful "off-the-clock" policies described above.

89.     Plaintiffs lodged complaints to their Supervisors regarding Defendant's "off the clock" policies depriving them of their statutorily required straight-time and overtime wages.

### FLSA COLLECTIVE ACTION ALLEGATIONS

90.     Plaintiffs seek to bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on their own behalf as well as those in the following collective:

> All persons employed by Defendant as Customer Service
> Representatives within Tucson, Arizona during the relevant time

11

period, who were subject to Defendant's unlawful "off-the-clock" policies whereby they were required to work prior to the start of their scheduled shift and to make-up "out of conformance time" in addition to their regular forty (40) hour workweek schedule without overtime pay at one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

91.     At all relevant times, Plaintiffs were similarly situated to all such individuals in the FLSA Collective[1] because while employed by Defendant, Plaintiffs and all FLSA Plaintiffs performed similar tasks, were subject to the same laws and regulations, were paid in the same or substantially similar manner, were paid the same or similar rate, were required to work in excess of forty (40) hours per work week, and were subject to Defendant's unlawful uniform "off-the-clock" policies of willfully failing to pay them at the statutorily required rate of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

92.     Defendant is and has been aware of the requirement to pay Plaintiffs and the FLSA Plaintiffs at a rate of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek, yet willfully failed to do so.

93.     The FLSA Plaintiffs, under Plaintiffs' FLSA claim, are readily discernable and ascertainable. All FLSA Plaintiffs' contact information is readily available in Defendant's records. Notice of this collective action can be made as soon as the Court preliminarily certifies the FLSA Collective.

94.     All questions relating to Defendant's violations of the FLSA share the common factual basis with Plaintiffs.  No claims under the FLSA relating to the failure to pay statutorily required overtime premiums are specific to Plaintiffs and the claims asserted by Plaintiffs are typical of those of members of the FLSA Collective.

95.      Plaintiffs will fairly and adequately represent the interests of the FLSA Collective

---

[1] Hereinafter referred to as the "FLSA Plaintiffs."

and have no interests conflicting with the FLSA Collective.

96.     A collective action is superior to all other methods of claim adjudication and is necessary in order to fairly and completely litigate violations of the FLSA.

97.     Plaintiffs' attorneys are familiar and experienced with collective and class action litigation, as well as employment and labor law litigation.

98.     The public will benefit from the case being brought as a collective action because doing so will serve the interests of judicial economy by reducing a multitude of claims to a single litigation.  Prosecution of separate actions by individual FLSA Plaintiffs also creates a risk for varying results based on identical fact patterns as well as disposition of the FLSA Collective's interests without their knowledge or contribution.

99.     The questions of law and fact are nearly identical for all FLSA Plaintiffs and therefore proceeding as a collective action is ideal.  Without judicial resolution of the claims asserted on behalf of the FLSA Collective, Defendant's continued violations of the FLSA will undoubtedly continue.

## FED. R. CIV. P.  23 CLASS ACTION ALLEGATIONS

100.     Plaintiffs seek to maintain this action as a class action pursuant to FED. R. CIV. P. 23, on behalf of those who, during the previous one (1) year, were subjected to violations of Arizona wage laws.

101.     The Fed. R. Civ. P. 23. Class which Plaintiffs seek to define includes:

> All persons employed by Defendant as Customer Service Representatives within Tucson, Arizona during the relevant time period, who were subject to Defendant's unlawful "off-the-clock" policies whereby they were required to work prior to the start of their scheduled shift and to make-up "out of conformance time" without pay at their straight-time rate.

102.     The number of class members protected by Arizona wage laws who have suffered under Defendant's violations of A.R.S. §§ 23-350 *et seq.* as set forth herein, are in excess of forty

(40) and thus are too numerous to join in a single action, necessitating class recognition.

103.    All questions relating to the Class's allegations under Arizona wage laws share a common factual basis with those raised by the claims of Plaintiffs. No claims asserted herein under Arizona wage laws are specific to Plaintiffs or any proposed Arizona Class member and the claims of Plaintiffs are typical of those asserted by the proposed Arizona Class.

104.    Plaintiffs will fairly and adequately represent the interests of all members of the proposed Arizona Class.

105.    A class action is superior to all other methods of adjudication and is necessary in order to fairly and completely litigate the Arizona Class's allegations that Defendant violated Arizona wage laws.

106.    The class members of the proposed Arizona Class are readily discernable and ascertainable. Contact information for all members of the proposed Arizona Class[2] is readily available from Defendant since such information is likely to be contained in their personnel files. Notice of this class action can be provided by any means permissible under the FED. R. CIV. P. 23 requirements.

107.    Plaintiffs assert these claims on their own behalf as well as on behalf of the Arizona Plaintiffs through their attorneys who are experienced in class action litigation as well as employment litigation.

108.    Plaintiffs are able to fairly represent and properly protect the interests of the absent members of the proposed Arizona Class and have no interests conflicting with those of the Arizona Class.

109.    The public will benefit from this case being brought as a class action because it serves the interests of judicial economy by saving the Court's time and effort and by reducing a

---

[2] Hereinafter referred to as the "Arizona Plaintiffs".

multitude of claims to a single litigation. Prosecution of separate actions by individual Arizona Plaintiffs creates a risk of varying results based on identical fact patterns as well as disposition of the classes' interests without their knowledge or contribution.

110. Because of the nature of wage and hour claims brought during the course of employment, class members are often fearful of filing claims against their employers and would benefit from Plaintiffs' willingness to proceed against Defendant. The anonymity inherent in a class action suit further provides insulation against retaliation and/or undue stress and fear for the Arizona Plaintiffs' jobs and continued employment.

111. The questions of law and fact that are nearly identical for all class members make proceeding as class action ideal. Without judicial resolution of the claims asserted on behalf of the proposed Arizona Class, continued violations of Arizona wage laws will undoubtedly continue.

112. Whether Plaintiffs and the Arizona Plaintiffs were required to work prior to the start of their scheduled shift and to make-up "out of conformance time" without pay at their straight-time rate are common questions which can readily be resolved through the class action process.

**<u>COUNT ONE</u>**

**(Violation of FLSA, 29 U.S.C. §§ 201 *et seq.*)**

**Made by Plaintiffs on Behalf of Themselves and All FLSA Plaintiffs**

113. Plaintiffs and the FLSA Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

114. Throughout the relevant time period, Plaintiffs and the FLSA Plaintiffs were required to clear their computers' cookies, activate the Pinpoint Mapping System, activate the D3 Member Information System, and active Defendant's landing page prior to the start of their scheduled shift and prior to "clocking in."

115. Throughout the relevant time period, Plaintiffs and the FLSA Plaintiffs were

required to make-up any "out of conformance time" prior to the end of the month in which it accrued.

116.    The work performed by Plaintiffs and the FLSA Plaintiffs prior to the start of their scheduled shift and making up "out of conformance time" was in addition to their regular forty (40) hour per workweek schedule.

117.    Throughout the relevant time period, Plaintiffs and the FLSA Plaintiffs were not compensated anything, including overtime pay, for their time spent working prior to the start of their scheduled shift and before "clocking in" and for making up "out of conformance time."

118.    Throughout the relevant time period, Plaintiffs and the FLSA Plaintiffs were required to work and did in fact work in excess of forty (40) hours per workweek.

119.    Defendant knowingly failed to pay Plaintiffs and the FLSA Plaintiffs for all hours worked and failed to pay Plaintiffs and the FLSA Plaintiffs the statutorily required overtime rate for all hours worked in excess of forty (40) per workweek.

120.    Defendant's conduct was willful and lasted for the duration of the relevant time periods.

121.    Defendant's conduct was in violation of the Fair Labor Standards Act.

**COUNT TWO**

**(Violation of Arizona Wage Statute §§ 23-350, *et seq*.)**

**Made by Plaintiffs on Behalf of Themselves and All Arizona Plaintiffs**

122.    Plaintiffs and the Arizona Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

123.    Plaintiffs and the Arizona Plaintiffs were paid on an hourly basis, which was non-discretionary.

124.    Plaintiffs and the Arizona Plaintiffs hourly wages were earned after working any

period of time for Defendant as their wages were based on time worked.

125.    A.R.S. § 23-351(A) requires employers to "designate two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to the employees" and to pay "all wages due the employee up to such date" on such paydays.

126.    A.R.S. § 23-351(C)(3) requires that "overtime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period."

127.    A.R.S. § 23-353(A) requires that, when an employee is terminated, an employer must pay all outstanding "wages due [to her] within seven working days or the end of the next regular pay period, whichever is sooner."

128.    A.R.S. § 23-353(B) requires that, when an employee quits, an employer must pay all outstanding wages "no later than the regular payday for the pay period during which the termination occurred."

129.    Throughout the relevant time period, Plaintiffs and the Arizona Plaintiffs were required to clear their computers' cookies, activate the Pinpoint Mapping System, activate the D3 Member Information System, and active Defendant's landing page prior to the start of their scheduled shift and prior to "clocking in."

130.    Throughout the relevant time period, Plaintiffs and the Arizona Plaintiffs were required to make-up any "out of conformance time" prior to the end of the month in which it accrued.

131.    The work performed by Plaintiffs and the Arizona Plaintiffs prior to the start of their scheduled shift and making up "out of conformance time" was compensable at their hourly straight-time rate.

132.    Throughout the relevant time period, Plaintiffs and the Arizona Plaintiffs were not

17

compensated anything, including their hourly rate of pay, for their time spent working prior to the start of their scheduled shift and before "clocking in" and for making up "out of conformance time."

133.    Defendant knowingly failed to pay Plaintiffs and the Arizona Plaintiffs their straight-time wages for all hours worked and failed to pay Plaintiffs and the Arizona Plaintiffs their overtime hours for all overtime hours worked in each of the workweeks.

134.    Defendant's conduct was not undertaken in good faith, was willful, and lasted for the duration of the relevant time periods.

135. Pursuant to A.R.S. § 23-355(A) an employee who is not timely paid wages owed by an employer is entitled to treble the amount of unpaid wages.

136.    Defendant's conduct was in violation of A.R.S. § 23-355.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiffs, on behalf of themselves and the FLSA and Arizona Plaintiffs employed by Defendant, demand judgment against Defendant as follows:

A.      At the earliest possible time, Plaintiffs should be allowed to give notice of this collective action, or the Court should issue such notice, to all members of the FLSA Collective, defined herein.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper overtime wages;

B.      Designation of Plaintiffs as representatives of the FLSA Collective and Arizona Class defined herein, and Plaintiffs' counsel as Collective and Class Counsel;

C.      Certification of this action as a collective action pursuant to 29 U.S.C. § 216(b) for the purposes of the claims brought on behalf of all proposed FLSA Collective members under the FLSA;

D.      Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 for the purposes of the claims brought on behalf of all proposed Arizona Class members under A.R.S. § 23-355;

E.      Preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

F.      Declaration that the practices complained of herein are unlawful and in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* and A.R.S. §§ 23-350 *et seq.*

G.      Awarding all damages which Plaintiffs and FLSA Plaintiffs have sustained as a result of Defendant's conduct since September 25, 2017, including back pay for unpaid overtime wages and liquidated damages, pursuant to 29 U.S.C. § 216(b);

H.      Awarding all damages which Plaintiffs and Arizona Plaintiffs have sustained as a result of Defendant's conduct since September 25, 2019, including back pay for unpaid straight-time wages, unpaid overtime wages, and treble damages under A.R.S. § 23-355(A);

I.      Awarding Plaintiffs and FLSA and Arizona Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs pursuant to 29 U.S.C. § 216(b); and A.R.S. § 12-341.01;

J.      Awarding Plaintiffs and FLSA and Arizona Plaintiffs of pre-judgment interest at the highest legal rate, from and after the date of service of the initial complaint in this action on all unpaid wages from the date such wages were earned and due;

K.      Awarding post-judgment interest, as provided by law;

L.      Awarding Plaintiffs and FLSA and Arizona Plaintiffs representing Defendant's share of FICA, FUTA, state unemployment insurance and any other required employment taxes; and

M.     Granting Plaintiffs and FLSA and Arizona Plaintiffs other and further relief as this Court finds necessary and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this First Amended Complaint.

DATED this 15th day of October, 2020.

**VALLI KANE & VAGNINI LLP**

By: *s/ Alexander M. White*
James A. Vagnini
*Admitted pro hac vice*
jvagnini@vkvlawyers.com
Alexander M. White
*Admitted pro hac vice*
awhite@vkvlawyers.com

**TURCHIK LAW FIRM, P.C.**

By:    s/Merle Joy Turchik
        Merle Joy Turchik
        Attorneys for Plaintiffs